*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Conservatorship of BLOSSOM LANIER.

| | |
|---|---|
| JOELYNN STOKES, Conservator of BLOSSOM LANIER, a legally protected person, | UNPUBLISHED<br>September 2, 2021 |
| Petitioner-Appellee, | |
| v | No. 352123<br>Wayne Probate Court |
| YVONNE CROSS, | LC No. 2018-835611-CA |
| Respondent-Appellant. | |

Before: BOONSTRA, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Respondent, Yvonne Cross, appeals as of right the order of the probate court determining title to certain property in favor of petitioner, Joelynn Stokes as Conservator of Blossom Lanier. The probate court's order set aside as void a quit claim deed purporting to transfer to respondent an interest in Blossom Lanier's home and denied respondent's petition for leave to file a counterclaim. We affirm.

## I. FACTS

Blossom Lanier owns a home at 110 East Boston Boulevard in Detroit, Michigan, where she lived for many years. In January 2018, Lanier was 89 years old and was experiencing memory loss. She was diagnosed with dementia related to Alzheimer's disease. She moved to the home of her daughter, Renee Lanier-Campbell, who petitioned the probate court for the appointment of a guardian and conservator for Lanier. Lanier-Campbell was appointed as Lanier's guardian, and on April 16, 2018, Joelynn Stokes was appointed conservator of Lanier's property.

Respondent lives near Lanier's home. Respondent filed a request for notice with the probate court asserting that she had a property interest in Lanier's home. Respondent claimed that on September 23, 2014, Lanier signed a quit claim deed transferring to respondent an interest with

rights of survivorship in 110 East Boston Boulevard for less than $1. The deed was not recorded until September 29, 2017. Respondent asserted that in 2013 she loaned Lanier $10,000 to assist Lanier in paying taxes, and that when Lanier could not repay the money she quit-claimed a joint interest in the home to respondent. Lanier's daughter, Renee Lanier-Campbell, disputed the deed. She asserted that Lanier never mentioned the purported transfer, was not friends with respondent, and was financially stable and therefore did not need a loan.

Petitioner sought a determination from the probate court of the title to the home, asserting that the alleged transfer to respondent was unconscionable and/or fraudulent. Respondent filed an objection contending that Lanier had given her an interest in the home, and supported her objection with the affidavit of Beverly Tran, who asserted that in 2014 she observed respondent give Lanier $10,000 in cash and later observed Lanier give respondent the quit claim deed.

The trial court held an evidentiary hearing on the petition, during which Lanier-Campbell testified that in 2014 Lanier was already suffering from dementia prior to being diagnosed with Alzheimer's in 2018. She also testified that Lanier never mentioned the purported transaction, and that when she spoke with respondent in 2015 respondent did not mention the transaction. Lanier-Campbell also testified that Lanier frequently told her that she intended for her family to inherit her property.

The probate court found Lanier-Campbell's testimony to be credible, and found respondent's testimony to lack credibility. Respondent initially informed the probate court that she would provide bank records to establish that she loaned Lanier $10,000, but later she was unable to do so, explaining that she had given Lanier $10,000 in cash that she already had at home. Respondent also initially testified that she had invested tens of thousands of dollars into the home since the transfer in interest, but later testified that she did not invest any money or perform any work on the house apart from lawn work and snow removal.

At the conclusion of the evidentiary hearing, the probate court held that the quit claim deed was procedurally and substantively unconscionable, and set the deed aside as void. The probate court found that respondent was a knowledgeable purchaser of real estate who owned several properties and had taken courses about real estate development. By contrast, in 2014 Lanier was suffering from the onset of Alzheimer's disease, was unsophisticated about real estate transactions, and there was no evidence that Lanier had consulted family or professionals about the alleged transaction. The probate court also found that the state equalized value of Lanier's home was much greater than the $1 consideration stated in the quit claim deed and also much greater than the $10,000 respondent claimed she loaned Lanier. The probate court determined the title to Lanier's home in favor of petitioner and denied respondent's petition for leave to file a counterclaim. Respondent now appeals.

## II. DISCUSSION

### A. UNCONSCIONABILITY

Respondent contends that the probate court erred by concluding that the quit claim deed was void because it was unconscionable. We disagree.

-2-

We review the probate court's factual findings for clear error. *In re Brody Conservatorship*, 321 Mich App 332, 336; 909 NW2d 289 (2017). A factual finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made. *Id*. We review de novo the probate court's legal conclusions. *Id*. In matters of witness credibility, we defer to the probate court in light of its ability to observe the witnesses. *Id*.

To grant relief from a contract on the basis of unconscionability, there must be a showing of both procedural and substantive unconscionability. *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 143; 706 NW2d 471 (2005). "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term." *Id*. at 144. "Substantive unconscionability exists where the challenged term is not substantively reasonable." *Id*. A contract or contract provision is substantively unconscionable where "the inequity of the term is so extreme as to shock the conscience," not simply because "it is foolish for one party and very advantageous to the other." *Id*.

In this case, the probate court concluded that the deed was procedurally unconscionable because at the time Lanier purportedly signed the deed, she was 85 years old and suffering memory loss, respondent was more knowledgeable about real estate, and Lanier did not have the benefit of consulting family members or professionals before signing the deed. The probate court concluded that the deed transfer was substantively unconscionable because, even if the transfer was in return for a $10,000 loan, the home and property were worth substantially more than $10,000 in 2014, and increasingly more thereafter. The probate court also concluded that respondent was not a credible witness, offered no proof of loaning $10,000 to Lanier, and contradicted her own claim that she made improvements to the property.

A review of the record supports the trial court's findings. Lanier's granddaughter testified that Lanier began suffering memory loss and symptoms of Alzheimer's disease in 2012 or 2013. A report from Lanier's doctor indicated that in May 2014, Lanier complained of memory loss. By September 2014, Lanier was described as having "good and bad days" with her memory. In 2016, Lanier was getting lost while driving and ultimately stopped driving. On February 21, 2018, Lanier was diagnosed with advanced Alzheimer's disease. Accordingly, the record supports the probate court's conclusion that on September 23, 2014, Lanier was suffering the symptoms of Alzheimer's disease, despite not being diagnosed with the illness until 2018.

Lanier's experience in real estate was limited, and she did not consult her family regarding the alleged transfer, nor receive professional advice. By contrast, respondent was knowledgeable about real estate. Respondent owned numerous properties, had taken courses in real estate, and was in the business of rehabilitating homes. Accordingly, the relative bargaining powers between respondent and Lanier supports the probate court's finding that the alleged transfer was procedurally unconscionable.

The record also supports the probate court's finding that the alleged transfer was substantively unconscionable. The quit claim deed purports to transfer Lanier's interest in the property to herself and respondent for "less than $1," significantly below the value of the property. Although respondent contends that the transfer was in lieu of repayment of a $10,000 loan, respondent was unable to provide any proof of the loan. Respondent also contradicted her own testimony, first testifying that she had spent thousands of dollars maintaining Lanier's home, then

-3-

admitting that she had spent no money on the property. The evidence thus supports the probate court's conclusion that the alleged transfer was procedurally and substantively unconscionable, and the quit claim deed was therefore void.

## B. JUDICIAL BIAS

Respondent contends that the probate court judge demonstrated judicial bias by denying respondent's witness, Beverly Tran, an opportunity to testify and by manipulating the discovery deadlines to prohibit the parties from deposing Tran. We disagree.

We note initially that respondent did not preserve the claim of judicial bias because she failed to raise it before the probate court. See *In re Leete Estate*, 290 Mich App 647, 655; 803 NW2d 889 (2010). Although this Court is not required to address an unpreserved issue, it may do so if the unpreserved issue presents a question of law and all the necessary facts for resolution of the issue are before the Court. *Id*.

Under MCR 2.003(C)(1)(a), a judge may be disqualified if "[t]he judge is biased or prejudiced for or against a party or attorney." A party seeking disqualification must establish "actual bias" meaning bias that is personal and extrajudicial in nature. *Cain v Dep't of Corrections*, 451 Mich 470, 495; 548 NW2d 210 (1996). A party seeking disqualification of a judge on the basis of bias or prejudice against that party "must overcome a heavy presumption of judicial impartiality." *Id*. at 497. "Judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible' and overcomes a heavy presumption of judicial impartiality." *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009) (quotation marks and citation omitted). A trial court's exercise of its discretion to control the proceedings and the trial court's rulings generally cannot be used to establish bias even if erroneous. *Huntington Nat'l Bank v Daniel J. Aronoff Living Trust*, 305 Mich App 496, 517; 853 NW2d 481 (2014).

In this case, respondent contends that the probate court judge was prejudiced against her because the judge had a prior conflict with Beverly Tran, whom respondent sought to call as a witness. Respondent asserts that Tran sued the probate court judge in federal court, apparently in the case of *Tran v Mich Dep't of Human Services*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued June 19, 2008 (Case No. 07-CV-13232). Respondent failed to establish, however, any connection between the probate court judge and those proceedings, and our review of that case reveals no such connection between the probate court judge and Tran.

Respondent also argues that the probate court judge demonstrated bias by precluding Tran from testifying and by intimidating Tran. Again, the record does not support this assertion. At the initial hearing held on the petition to determine title, the probate court considered Tran's affidavit and concluded that it was insufficient to determine the validity of the deed. At the next hearing, Tran was present and prepared to testify, but the probate court concluded that further discovery was necessary. The parties agreed that they would depose Tran rather than require her to appear at a later date. Neither party scheduled Tran's deposition, however.

On October 29, 2019, respondent's counsel subpoenaed Tran to appear at the evidentiary hearing the next day. Tran sent an e-mail to the probate court stating that she would not be appearing as a witness because she was subpoenaed less than 24 hours in advance and had no further information to provide than what was included in her affidavit. Tran further indicated that she did not want to appear before the probate court judge "due to ongoing legal matters of interest in previous child wear [sic] proceedings . . . where any final determination may be viewed and challenged as a conflict of interest due to this disclosure." The probate court judge noted that she did not know what Tran was referencing. In sum, respondent's counsel failed to depose Tran or timely subpoena her as a witness. There is no evidence supporting respondent's claim that the probate court demonstrated prejudice toward Tran or respondent.

Respondent also argues that the probate court judge demonstrated judicial bias by embracing petitioner's characterization of her "as a craven and cynical, almost predatory realty acquirer." The probate court judge never expressed such a characterization of respondent, however, but characterized respondent as "knowledgeable and savvy about real estate deals" because respondent testified that she "has taken courses and has educated herself about real estate development."

Respondent also argues that the probate court judge demonstrated bias by informing petitioner that William Eubanks and Cora Eubanks were the former owners of respondent's home. Respondent asserts that petitioner only could have known of her connection with the Eubanks if the probate court judge informed petitioner of respondent's relationship with the former owners of her home. Again, we disagree. At the evidentiary hearing, petitioner presented evidence regarding respondent's acquisition of her home from William and Cora Eubanks, arguing that similarities between the way in which respondent obtained her own home and the deed transfer in this case raised questions about respondent's credibility. There was no evidence presented regarding the means by which petitioner learned of this information, however, and no support for respondent's claim that the probate court judge informed petitioner of this information. Accordingly, respondent failed to demonstrate judicial bias on the part of the probate court judge.[1]

---

[1] We decline to address the additional arguments raised by respondent in her reply brief because "[r]eply briefs must be confined to rebuttal of the arguments raised in the appellee's or cross-appellee's brief." MCR 7.212(G). We also decline to address respondent's arguments that petitioner intentionally misrepresented Lanier's assets by failing to identify 110 East Boston Boulevard and the property contained therein on the inventory list. Respondent did not raise this issue before the probate court and the issue therefore is unpreserved. *In re Leete Estate*, 290 Mich App at 655. Although the first two inventories filed by petitioner did not include the disputed home, petitioner may have not included 110 East Boston Boulevard on the first two inventories because its ownership was in dispute before the probate court. Because respondent did not raise this issue before the probate court, however, the record does not provide the information necessary to resolve this issue. Moreover, because we conclude that respondent does not have an ownership interest in Lanier's home, the alleged error did not affect respondent's rights.

-5-

## C. AMENDMENT OF ORDER

Respondent also argues that the probate court erred by amending its order without providing her notice or hearing after she filed her claim of appeal. We disagree. MCR 2.612(A)(1) provides that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it." On January 7, 2020, the probate court amended its December 16, 2019 order to reflect the proper date of the quit claim deed and to include the full address and legal description of the property. The corrections did not change the substance of the order, and thus were appropriate under MCR 2.612(A)(1).

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola